The County of Allegheny et al., Plaintiffs *v.* Commonwealth of Pennsylvania, Department of Public Welfare et al., Defendants.

Argued December 6, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT and DISALLE.

*Robert S. Barker,* Assistant County Solicitor, and *Loraine S. Tabakin,* Assistant County Solicitor, with them, *Alexander J. Jaffurs,* County Solicitor, for plaintiffs.

*Margaret Hunting,* Deputy Attorney General, with her *Norman J. Watkins,* Deputy Attorney General, *Jack G. Handler,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendants.

*Robert P. Meehan,* Deputy Counsel, with him *Lester Eisenstadt,* Deputy Auditor General, for Al Benedict.

Opinion by Judge Wilkinson, Jr., January 9, 1978:

Section 507(a)(4) of the Mental Health and Mental Retardation Act of 1966[1] (Act) provides (with exceptions not relevant here) that the Commonwealth shall pay for the "[i]nterim care of mentally retarded persons, who have been removed from their homes and who, having been accepted, are awaiting admission to a State facility." Plaintiffs have brought an amended complaint in mandamus, alleging that the Commonwealth is liable for the entire cost of such care and seeking to compel the Commonwealth, through the Department of Public Welfare (Department), to reimburse plaintiff County of Allegheny (County) for the difference between the amount the County has expended for such care between July 1, 1969 and June 30, 1976, and the amount the County has already received under Department reimbursement formulas. We sustain the preliminary objections and dismiss the complaint.

Since at least 1969, the County has met its obligation under Section 301(d)(8) of the Act, 50 P.S. §4301 (d)(8), to insure availability of interim care through arrangements with various private licensed facilities. The Department has never reimbursed the County for the full amount of such expenditures but instead has employed formulas pursuant to a Department regulation found at 1 Pa. B. 179 (August 15, 1970). The regulation reads in pertinent part:

> 1.212(a)  For Interim Care, the maximum fee for which the State will participate in payment shall not exceed the average per diem cost of care in the State Schools and Hospitals.

Plaintiffs allege that the County was reimbursed at the rate of $8.50 per patient per day from July 1, 1969

---

[1] Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §4507(a)(4).

through April 30, 1970; at the rate of $11.00 per patient per day from May 1, 1970 through June 30, 1975; and at the rate of $15.00 per patient per day from July 1, 1975, resulting in an alleged difference between actual and reimbursed costs of approximately $2,770,-000 for the period July 1, 1969 to June 30, 1976. By fiscal memorandum from the Secretary of the Department, effective July 1, 1975, the $15.00 rate was specifically included in each county's "base allocation," an unassigned annual grant from the Commonwealth from which funding of numerous county mental health and mental retardation programs is to be made. The memorandum stated that a county could reimburse private licensed facilities at a per diem rate higher than $15.00 by drawing from its base allocation, provided guidelines set forth in the memorandum were met. The record also shows that a supplement to the memorandum, effective February 9, 1976, directed that the fixed per diem rate be replaced by a more flexible rate based on reasonable costs within each region of the Department.

Plaintiffs filed their complaint in mandamus in July 1975. Following the filing of an amended answer and new matter, the County moved for peremptory judgment or, in the alternative, for judgment on the pleadings, both of which were denied by order of President Judge BOWMAN. In November 1976, after filing its reply to new matter, the County again moved for judgment on the pleadings. On August 4, 1977, in an opinion by Judge KRAMER, plaintiffs were ordered to amend their complaint to include the State Treasurer and Auditor General of the Commonwealth as defendants, which was done. The Auditor General then moved to have himself dropped as a party and the other defendants filed preliminary objections to the amended complaint in mandamus.

As plaintiffs have stated both in their brief and oral argument that they have no objection to the motion of the Auditor General that he be dropped as a party, it is granted.

We turn, then, to the principal argument of the remaining defendants in support of their preliminary objections to the amended complaint in mandamus—that the regulation published in the Pennsylvania Bulletin on August 15, 1970 limits the Commonwealth's liability for reimbursement of a county's interim care expenditures. Plaintiffs contend that the language of Section 507(a)(4) imposes a clear duty upon the Commonwealth to pay the entire cost of such interim care. While it is true that the Act requires the Commonwealth to pay for interim care, we cannot agree with the plaintiffs that a county is free to expend whatever it chooses for such care, often through arrangement with private licensed facilities, and thereby obligate the Commonwealth to reimburse the entire amount without limitation. The regulation of August 15, 1970, issued under the express power of the Department to "make . . . and enforce all regulations necessary and appropriate to the proper accomplishment" of its duties under the Act (Section 201(2) of the Act, 50 P.S. §4201(2)), is fully in accord with the intent of the Legislature in placing on the Department the responsibility "to assure the availability of and equitable provision for adequate mental health and mental retardation facilities" throughout the Commonwealth. *Hoalick v. Retreat State Hospital,* 24 Pa. Commonwealth Ct. 218, 222, 354 A.2d 609, 611 (1976). Lawfully promulgated, the regulation is, of course, as binding upon us as the Act itself. Therefore, we cannot compel the Department to pay the entire cost of interim care sought by the plaintiffs.

Plaintiffs contend that the same issue has been addressed in *In Re Joyce Z.,* 123 P.L.J. 181 (1975).

There, a severely retarded child had been accepted in a state institution, which was adjudged too under-staffed to provide adequate care, and was then placed indefinitely in a foster home. The Allegheny County Court of Common Pleas ordered the Commonwealth to pay the cost of the child's care. We note, however, that there the per diem rate of reimbursement was stipulated; plaintiffs here seek reimbursement for costs without limitation. Thus, In Re Joyce Z., supra, is not contrary to defendants' position that, while the Commonwealth is obligated to pay for interim care, the cost of such care for which the Commonwealth will participate is subject to limitation.[2]

In our holding, we recognize the concerns of the County, the organizations representing the interests of the mentally retarded, and especially the parents of mentally retarded children that the County be able to continue to provide quality interim care. We urge the Department to continue to give those concerns its utmost consideration. The regulation modification effective February 9, 1976, seems most appropriate.

Accordingly, we will enter the following

ORDER

Now, January 9, 1978, the motion of defendant Al Benedict, as Auditor General of the Commonwealth of Pennsylvania, to be dropped as a party in No. 987 Commonwealth Docket 1975 is hereby granted.

The preliminary objections of the remaining de-fendants to the amended complaint in mandamus at

---

[2] Further, we observe that two Department memoranda, one effective April 1970 and the other (described previously in this opinion) effective July 1, 1975, described by the common pleas court as "internal policy guidelines" of the Department, having been respectively superseded by and necessary to the effectuation of the regulation published August 15, 1970.

No. 987 Commonwealth Docket 1975 are hereby sustained and the complaint dismissed.