505 A.2d 1043

Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner *v.* Children's Rehabilitation Center, Inc., and Children's Care Center, Inc., Respondents.

Argued February 3, 1986, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Howard Ulan*, Assistant Counsel, with him, *Jules S. Henshell*, for petitioner.

*Melvin L. Vatz*, for respondents.

OPINION BY JUDGE CRAIG, March 14, 1986:

The Department of Public Welfare (DPW) appeals an order of the Board of Claims (board) which held DPW liable for payments of per diem rates for interim care of patients and which awarded the Children's Rehabilitation Center, Inc. and the Children's Care Center (CRC and CCC) $231,356.34 plus interest, for providing those services.

The board found that CRC and CCC are private, proprietary facilities licensed by the Commonwealth of Pennsylvania to provide services for mentally retarded and mentally disabled persons, including interim care of mentally retarded persons who have been removed from their home and are awaiting admission to a state operated facility. Using allocations provided by DPW, the Mental Health/Mental Retardation (MHMR) Program agencies established by each county purchase the interim care on a fee basis for each individual client.

On December 15, 1976, and again on January 17, 1978, CRC notified the county Mental Health/Mental Retardation Program administrators that it was increasing its per diem rates for interim care.[1] On November 11, 1976, and again on January 12, 1978, CCC also notified the program administrators that it was increasing its per diem rates.[2] On August 27, 1975, DPW issued Fiscal Memorandum No. 8 requiring private facilities to

---

[1] Effective January 17, 1978, CRC's per diem rate was $32.75 per day.

[2] Effective January 12, 1978, CCC's per diem rate was $38.00 per day. Neither CCC's per diem rate nor CRC's rate exceeded the facilities' usual and prevailing charges to the general public, and

submit budgets to DPW for approval of rates which exceeded $15 per day.[3] Because CRC and CCC did not submit budgets, DPW refused to approve the interim care rates. CRC and CCC hence filed this action seeking the difference between the amounts billed (at established rates) and the amounts paid (at DPW "approved" rates).[4]

The board's conclusions included the following particularly pertinent ones:

> 5. DPW is required to pay the cost of interim care services.
>
> . . . .
>
> 7. When county programs purchase interim care services from CRC and CCC, they do so as agents for DPW.
>
> 8. During the time period of the complaint, implied contracts were created between the counties as agents for the department and [CRC and CCC] to pay for the services provided at the rates established by [CRC and CCC].
>
> . . . .
>
> 11. The failure by CRC and CCC to submit their budget to the counties and DPW did not preclude them from establishing their rate and the continuing purchase of their services by the

---

neither rate exceeded the average cost of such care in state schools and hospitals.

[3] On February 9, 1976, DPW issued Supplement No. 1 to Fiscal Memorandum No. 8, assigning the responsibility for determining a facility's interim care per diem rate to the regional DPW office in the geographical area of the facility. This action transferred the responsibility from the counties to DPW for determining per diem rates.

[4] CRC and CCC filed lawsuits against the Commonwealth and some of the counties. Of those lawsuits, those against Allegheny, Cumberland, and Perry Counties are pending.

counties and DPW created contracts at those rates.

12. DPW is liable to CRC and CCC for the difference between the amounts *billed for interim care and services* and the amounts paid, plus interest. (Emphasis added.)

In this appeal, DPW contends that the county MHMR Program agencies do not act as agents for DPW when purchasing interim care; hence, DPW contends, the county agencies cannot bind DPW to pay the higher rates. Further, DPW contends that the requirement that budgets be submitted is a valid cost-containment measure and that CRC and CCC's failure to submit budgets disqualified them from receiving the requested per diem rates. This court agrees and reverses the order of the board.

Section 507(a) of the Mental Health and Mental Retardation Act of 1966[5] provides (with exceptions not relevant here) that the Commonwealth shall pay for the "[i]nterim care of mentally retarded persons, who have been removed from their homes and who, having been accepted, are awaiting admission to a State facility." The board, interpreting this statute, stated that "what the statute does is impose the primary responsibility for interim care on the state and creates a principal-agent relationship between the county and the state." Although the Act does require the Commonwealth to pay for interim care,

> we cannot agree . . . that a county is free to expend whatever it chooses for such care, often through arrangement with private licensed facilities, and thereby obligate the Commonwealth

---

[5] Act of October 20, 1966, Sp. Sess, No. 3, P.L. 96, *as amended,* 50 P.S. §4507(a)(4).

to reimburse the entire amount without limitation.

*County of Allegheny v. Department of Public Welfare,* 33 Pa. Commonwealth Ct. 267, 271, 381 A.2d 1014, 1016 (1978).

In *County of Allegheny,* this court held that the regulation published in the Pennsylvania Bulletin on August 15, 1970[6] was as binding upon us as the Act itself, and consequently, this court could not compel DPW to pay the entire cost of interim care.

Because the holding in *County of Allegheny* is controlling here,[7] the necessary conclusion is that the county MHMR Program agencies did not act as agents for the Commonwealth.

Section 201(2) of the Mental Health and Retardation Act[8] states that DPW shall have the power "[t]o make ... and enforce all regulations necessary and appropriate to the proper accomplishment" of its duties. DPW must have some means by which to evaluate service fees before it can authorize payment. Fiscal Memorandum No. 8 and Supplement No. 1, issued under this express power, are fully in accord with the intent of the legislature to place on the department the responsibility "to assure the availability of and equitable provision for ade-

---

[6] The departmental regulation found at 1 Pa.B. 179 states in pertinent part:

> 1. 212(a). For Interim Care, the maximum fee for which the State will participate in payment shall not exceed an *average per diem cost of care in the State Schools* and Hospitals.

[7] Contrary to the board's view, this case is not distinguishable from *County of Allegheny.* In both cases, the plaintiffs are seeking payment for the difference in approved rates and their own per diem rates, and both cases involve a determination of the Commonwealth's liability for payment of interim care service fees, which DPW had not previously approved.

[8] 50 P.S. §4201(2).

quate mental health and mental retardation facilities." *Hoolick v. Retreat State Hospital,* 24 Pa. Commonwealth Ct. 218, 222, 354 A.2d 609, 611 (1976) *aff'd* 476 Pa. 317, 382 A.2d 739 (1978).[9]

Accordingly, we hold that Fiscal Memorandum No. 8 and Supplement No. 1 were proper methods of limiting DPW-approved rates for interim care services, and those rules required CRC and CCC to submit budgets before DPW could authorize payment.[10]

Accordingly, the board's order is reversed.

ORDER

Now, March 14, 1986, the order of the Board of Claims, dated April 11, 1985, is reversed.

---

[9] In *County of Allegheny,* Judge WILKINSON noted that Fiscal Memorandum No. 8, which allowed the fixed per diem rate to be replaced by a more flexible rate based on reasonable costs within each region of the department, seemed appropriate.

[10] Even if an implied contract existed between DPW and CRC and CCC, the Supreme Court of Pennsylvania has held that, where a public contract states the procedure for additional charges or extras, claims will not be allowed unless those provisions have been strictly followed. *Nether Providence County School Authority v. Thomas M. Durkin & Sons, Inc.,* 505 Pa. 42, 476 A.2d 904 (1984), *citing Morgan v. Johnstown,* 306 Pa. 456, 160 A. 696 (1931).